Argued and submitted April 16, affirmed August 4, 1980

# RAMAHI,
## *Respondent,*
### *v.*
# HOBART CORPORATION,
## *Appellant.*

## (No. 77-0785, CA 12895)

615 P2d 348

Ridgway K. Foley, Jr., Portland, argued the cause for appellant. With him on the briefs were Thompson, Hine & Flory, and Michael M. Hughes, Cleveland, Ohio, and Schwabe, Williamson, Wyatt, Moore & Roberts, and Roland F. Banks, Jr., Portland.

Arthur C. Johnson, Eugene, argued the cause for respondent. With him on the brief were Johnson, Harrang, Swanson & Long, and Michael L. Williams and R. Scott Palmer, Eugene.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

This is a products liability case. Plaintiff, five years of age, was injured on April 2, 1975, while in the care of defendants Asayed, owners of a restaurant in Eugene. At the time of the accident plaintiff had been left in their care by her parents. While helping push food into a food grinding machine, plaintiff's hand was caught and seriously injured, requiring amputation. Plaintiff, an Oregon resident, brought an action for damages, alleging negligence and strict liability. She alleged negligence against the Asayeds, who were Oregon residents, Indigo Industries, Inc., an Oregon corporation, seller of the chopping device to the Asayeds, and Hobart Corporation, an Ohio corporation, the manufacturer of the product. She also alleged strict liability against Hobart and Indigo.[1] Indigo was involuntarily dissolved for failure to pay fees on August 23, 1976, prior to the filing of this action, and it made no appearance in this case. It had, however, been served with the summons and complaint.

Following a bizarre series of procedural events, the court, sitting without a jury, entered judgment for plaintiff and awarded $275,000 damages. The chronology of those events created the issues on appeal.

On November 10, 1978, five days prior to the trial date, plaintiff and defendants Asayed entered into a settlement of plaintiff's claim against them. The order of dismissal was not signed until November 15,

---

[1] Hobart moved for summary judgment on its affirmative defense based on ORS 12.115(1), which provides:

"In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

The motion was denied, the court saying:

"The evidence seems to be undisputed that the Defendant designed, manufactured and last sold the power unit part of the machine in 1937; however, it is a question of fact for the trier of fact whether or not the Defendant designed, manufactured and last sold the cylinder/chopping unit part of the machine in 1937."

1978, and not filed until November 17, 1978. The parties disagree as to when Hobart learned of the settlement. Plaintiff recalled it to be the morning of November 11, 1978. Hobart claimed it learned of the agreement on Monday, November 13, and was not given notice of the order of dismissal until November 22, 1978.[2]

On the morning of November 15, 1978, plaintiff and Hobart appeared in circuit court for trial assignment. As noted previously, Indigo did not appear. The case was assigned to Judge Woodrich for 1:30 p.m. that day. After the assignment[3] plaintiff served Hobart, and filed with the court, a trial memorandum which omitted the Asayeds from the caption of the case. That was the first filed document which deleted the Asayeds as defendants. During the afternoon of the 15th, the court heard arguments on pre-trial motions, ruling on several matters while reserving rulings on others. The pleadings were amended to omit the Asayeds.[4] Trial was set to commence the next day.

When the proceedings began on November 16, 1978, Hobart announced its intention to remove the

---

[2] Hobart claimed that plaintiff's failure to give it notice of the terms and provisions of the settlement violated ORS 18.455(2). That issue is not raised on appeal.

[3] At the time of assignment, Hobart filed a supplemental answer, alleging the terms of the plaintiff-Asayed settlement.

[4] Plaintiff also then submitted her Requested Jury Instruction #28 which stated in part:

"PLAINTIFF'S REQUESTED INSTRUCTION NO. 28

"EFFECT OF SETTLEMENT WITH ONE DEFENDANT

"The Plaintiff has settled her claim with the Defendants Yaser and Khuvaima Asayed, the owners of the Oasis Restaurant, and those Defendants have been removed from the case.

"The law encourages settlements, and we are in favor of having the parties dispose of their litigation that way, if they can, but in this case the case continues against the remaining Defendant, Hobart Corporation. ***."

case to federal court. Hobart's counsel informed the court that after receipt of plaintiff's trial memo and requested jury instruction omitting the Asayeds from the caption, it considered the case removable to federal court pursuant to 28 USC § 1466(b) and that the state court lacked jurisdiction to proceed further. Judge Woodrich indicated that removal was not proper and timely and that the case would proceed. The following colloquy took place between the court and Hobart's counsel:

"[Counsel]: May it please the court, I appreciate the chance for the recess and I have discussed the matter with my clients and I appreciate the court's position in the matter, but my clients still feel that they have the right under the federal statute to remove the case at this time and they have been advised by me that if they insist upon that right they must leave the courtroom. They must leave the courtroom because if they stay they will waive that right.

"So at this point, although we do have under the statute 30 days in which to accomplish the documents removing this case, I will file this kind of beat up petition because it is hastily put together, but it is my clients' position and I will file it with the court at this time. A notice of filing of petition of removal and we will attempt to get the rest of the documents filed in federal court and in this court as quickly as possible.

"And I will serve a copy of this same document on Mr. Johnson.

"The Court: And have your clients been fully advised that if this matter proceeds through judgment that all of the consequences, of course, of that would be — would be obvious to them?

"[Counsel]: That is the reason I wanted the 5 minute recess.

"The Court: I understand. But if you want another 5 minutes to think it over, I want them to have that opportunity because in the event the matter were to proceed, the judgment would be a substantial judgment and if their position should not be sustained in federal court, of course, all the consequences of the judgment then being entered would

follow. And I think there should be no question in their minds concerning that. And if there is, why, I think this is the time to have those matters clarified rather than to say it later that they didn't have time to consider it.

"[Counsel]: Yes. I think the position of my clients and Mr. Hughes from Houston — I mean from Cleveland — and I introduced him to the court yesterday, I think he can state it better than I do, but I think my clients' position is and I concur with them in the law is that once we have given this court notice of the intent to file a petition for removal on the basis of diversity, all jurisdiction of this matter is then in the federal courts and this court has no further jurisdiction to proceed on the matter until such time and if the court should remand the matter. And anything we should discuss or argue about now is a matter that is to be considered at a remand motion rather than in this court. And I am afraid our problem is that if we continue in this court, then, we would be in jeopardy of waiving our position that I have just indicated now."

Hobart did not ask for a stay of the state proceedings in order to file a removal petition in federal court. It filed a document captioned "Notice of Filing Petition for Removal,"[5] which indicated only that Hobart intended to file a removal petition in federal court. Hobart's representatives all then left the courtroom.

Plaintiff waived a jury trial, and the case was heard by the court. After hearing the evidence, the court took the matter under advisement briefly and

_____

[5] The actual paper filed had several of the typewritten words crossed out and handwritten words inserted, so that the notice actually read (the underlined words were added by hand):

"Please take notice that Hobart Corporation, defendant herein, has on this *16* day of November, 1978, filed its Petition for Removal, a copy of which ~~is attached~~ *will be delivered to this court as provided by law* hereto, with a surety bond as prescribed by law, in the office of the Clerk of the United States District Court for the District of Oregon."

The petition had not then been filed.

then found for plaintiff against Hobart and Indigo. The judgment was entered at 3:29 p.m. and was docketed at 3:43 p.m. Later that afternoon it was discovered that the court clerk had docketed the judgment against all defendants, including the Asayeds. An amended judgment conforming the judgment to the oral judgment given by the court against Hobart and Indigo only was signed by the judge at approximately 4:45 p.m. on November 16.[6]

Meanwhile, *at approximately 2:40 p.m.,* Hobart filed a petition for removal in the federal district court in Portland, accompanied by the proper bond. *See* 28 USC § 1446(d). A copy of the removal petition was filed with the state court at 4:55 p.m. on November 16. The notice of removal, required to be served on the adverse party (28 USC 1446(e)), was received by plaintiff on November 17, 1978.

On November 24, 1978, plaintiff filed a motion in federal court to remand the case to state court. At the hearing on December 4, 1978, the federal court ordered the case remanded to state court, the judge saying:

"This case is remanded to the Lane County Circuit Court. The removal was not timely.

"There's something wrong with a procedure that allows a party to simply walk out on a Judge and remove to another Court. The State Court would be put in an impossible position if this were the rule. The procedure would allow any party to force a continuance even after a denial by a trial Judge by simply filing the removal petition. In this City, where the Courthouses are only two blocks apart, it would be even easier. And remember that the removal petition can be filed and the Court is ousted of his power to proceed whether or not there's any merit in the removal petition.

"I'm just positive that the framers of this rule did not intend for it to act in this way. And besides all

---

[6] The exact time of docketing the amended judgment was not recorded; however, Judge Woodrich states in his affidavit that he signed the amended judgment between 4:40 p.m. and 4:45 p.m. on November 16, 1978.

that in this case, complete diversity was absent on the face of the pleadings. The State trial Judge did the right thing in continuing with the trial. He did what he had to do."[7]

On December 5, 1978, plaintiff filed her cost bill in state court. Defendant objected to it and moved to vacate the state court judgment and amended judgment entered against it on the ground that the court lacked subject matter jurisdiction. That motion was denied, and the cost bill was allowed.

Hobart appeals from the judgment and amended judgment and the order denying its motion to vacate, claiming that by the filing in federal court of the petition for removal prior to the entry of the judgment in the state court, the state court was deprived of subject matter jurisdiction. Hobart also claims that even if the court had jurisdiction to enter a judgment, the court failed to enter a final judgment adjudicating all the rights and liabilities of all the parties as required by ORS 18.125. Finally, Hobart argues that the court erred in denying its objections to plaintiff's cost bill.

Removal is a statutory procedure. 18 USC § 1446 provides for removal by a defendant of an appropriate action from state to federal court.[8] To accom-

---

[7] 28 USC § 1447(d) provides that the remand of a case from federal to state court is not reviewable, "on appeal or otherwise." That is true even if the federal court used erroneous principles in making its determination or made an erroneous finding. *Gravitt v. Southwestern Bell,* 430 US 723, 97 S Ct 1439, 52 L Ed 2d 1 (1977); *Volvo of America Corp. v. Schwarzer,* 429 US 1331, 97 S Ct 284, 50 L Ed 2d 273 (1976).

[8] Whether this case was an appropriate one for removal was determined by the federal court by the order of remand. That order is not reviewable. *See* n 7, *supra.* The federal court concluded that complete diversity did not exist as required by 28 USC § 1441(b), which provides:

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly

plish removal the defendant must file a petition for removal in federal court and "[p]romptly after the filing of such petition" must give notice to adverse parties and file a copy of the petition with the state court "which shall effect the removal and State court shall proceed no further." 28 USC § 1446(e).

Hobart filed its removal petition in federal court at 2:40 p.m., November 16, 1978. The second requirement — notifying the adverse party — was not completed until November 17, 1978, when copies of the petition were served on plaintiff. The third requirement — filing a copy of the removal petition with the state court — was completed at 4:55 p.m., November 16. It was filed after the state court had entered its judgment against Hobart and Indigo.

The parties agree that during a period between the filing of a removal petition in federal court and the filing of a copy of that petition in state court and notifying the adverse party, the state and federal court possess concurrent jurisdiction over the case. Hobart maintains, however, that the entry of the amended judgment by the state court after the filing of the removal petition in federal court conflicted with the exercise of jurisdiction by the federal court.

joined and served as defendants is a citizen of the State in which such action is brought."

Hobart seems to argue that defendant Indigo was not a party in this case because it was dissolved in August, 1976, after the cause of action arose, but before this case commenced. ORS 57.630(1) provides:

"The dissolution of a corporation shall not take away or impair any remedy available . . . against such corporation, . . . or any liability incurred, prior to such dissolution, if action or other proceeding thereon is commenced within five years after the date of issuance of a certificate of dissolution or filing of a decree of dissolution. ***."

While Indigo made no appearance in this case, it remained a proper defendant, and plaintiff is entitled to pursue Indigo on her judgment for whatever she can recover. There has been no showing that plaintiff's claim against Indigo was of a frivolous nature or a sham for jurisdictional purposes. While Hobart directs our attention to plaintiff's requested jury instruction #28(*see* n 4, *supra*), that instruction was captioned "Effect of Settlement with One Defendant."

In Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3737, 741-743, the authors state:

> "*** Although there are some cases holding that removal is effective from the time the petition is filed with the federal court, and that the later completion of the other steps operates to vest jurisdiction in the federal court as of the earlier date, it seems unfair to a state court to hold that it can be stripped of jurisdiction even though it has not received notice of the removal. 'It is unseemly to have state courts passing on matters, only to learn later that they had no jurisdiction.' Accordingly, the sounder rule, and the one most consistent with the language of Section 1446(e), is that removal is not effective until all the steps required by the federal statute have been taken. ***" (Citation and footnotes omitted.)

■ Under the express language of 18 USC § 1446(e), the state court loses all jurisdiction after compliance with that statute; the federal court acquires exclusive jurisdiction. *Master Equipment Inc. v. Home Ins. Co.,* 342 F Supp 549 (DC Pa 1972); *South Carolina v. Moore,* 447 F2d 1067 (4th Cir 1971); *Marsh v. Tillie Lewis Foods, Inc.,* 257 F Supp 645 (DC SC 1966); Annotation, 38 ALR Fed 824 § 3; 1A Moore, Federal Practice § 0.168 [3.-8], 511. Pending the filing in state court of a copy of the petition for removal and notice to the adverse party, the state court continues to have jurisdiction. *Delavigne v. Delavigne,* 402 F Supp 363 (D Md 1975), *aff'd* 530 F2d 598 (4th Cir 1976). State court proceedings during the interim are valid. *Delavigne v. Delavigne, supra; McGoldrick v. ICS Sales and Leasing, Inc.,* 412 F Supp 268 (ED NY 1976); *Berberian v. Gibney,* 514 F2d 790 (1st Cir 1975); *Cavanaugh v. Atchison, T. & S.F.R. Co.,* 103 F Supp 855 (DC Mo 1952).

■■ When Hobart walked out of state court, the federal court had not acquired jurisdiction. It did not ask for a stay of the state proceedings. The state court

properly proceeded with the case.[9] Hobart erroneously believed that it must leave state court immediately in order to perfect removal to federal court or its right to removal would be waived. Removal may be effected after the trial has commenced, as in this case, if the removal is timely. 1A Moore, *Federal Practice* 0.157(9); Wright, Miller & Cooper, *Federal Practice and Procedures: Jurisdiction* § 3737, 742-744, and cases cited therein. Hobart, without prejudice, could have raised an objection during the trial at the time it first considered the case removable and preserved its record. Its right to removal would not have been waived. *Waldron v. Skelly Oil Co.,* 101 F Supp 425 (ED Mo 1951); *Heniford v. American Motor Sales Corp.,* 471 F Supp 328 (D SC 1979). If Hobart believed removal was proper, it could have continued its defense in state court under protest while proceeding to file its petition for removal in federal court. *See Waldron v. Skelly, supra; Metropolitan Casualty Ins. Co. v. Stevens,* 312 US 563, 61 S Ct 715, 85 L Ed 1044 (1940).

■    Hobart also contends that it could not have filed a petition for removal earlier, prior to trial, until it was served with a filed court document which indicated that the Asayeds had been dropped as defendants. 18 USC § 1446(b), provides that removal must be predicated on the record of the trial court:

[9] Hobart also argues that the trial judge abused his discretion in continuing with the trial after it filed its "Notice of Filing Petition for Removal" and left the court. While we are aware of authority for the proposition that the giving of notice to the state court and to the adverse party effects removal without necessitating the formal filing of a copy of the petition for removal (Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3737, 743), Hobart's unusual document did not provide the court or plaintiff with actual knowledge that a federal court possessed concurrent jurisdiction.

In *United States ex rel Echevarria v. Silberglitt,* 441 F2d 225 (2nd Cir 1971), the court noted that the purpose of the requirement that a copy of the removal petition be filed with the state court is to give that court notice of the removal to avoid the possibility of inconsistent results in the same case. That purpose is achieved where the state court has actual notice of the removal, which was not achieved in this instance by the document originally filed. *See Adair Pipeline Co. v. Pipeliners Local Union,* 203 F Supp 434 (DC Tex 1962); *In Re Marriage of Pardee,* 408 F Supp 666 (DC Cal 1976).

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

That statute has not been construed to require a defendant to wait until being served with papers that show that total diversity is present. Courts have permitted removal under § 1446(b) where the basis of removability is manifested in the conduct of plaintiff or when plaintiff states orally in court the changed circumstances. *See Heniford v. American Motor Sales Corp., supra; Bumgardner v. Combustion Engineering,* 432 F Supp 1289 (D SC 1977); *Kulbeth v. Woolnought,* 324 F Supp 908 (SD Tex 1971). In *Waldron v. Skelly, supra,* the court noted:

"The courts have repeatedly held that when a case becomes removable during the process of a trial, the right to remove may be waived by proceeding with the trial without objection, but that if timely objection is made the record is preserved and what happened thereafter does not prevent the removal." 101 F Supp at 426.

Hobart acknowledges that at the latest it learned on Monday, November 12, 1978, three days prior to trial, that plaintiff had settled her claim with the Asayeds, and that it received on November 15 documents filed with the court which disclosed the settlement. Yet Hobart did not begin removal proceedings until the second day of the trial, November 16. The record does not support Hobart's suggestion that it was thrust into a dilemna created by a last minute settlement.

We hold that the trial court had jurisdiction.

■    In its second assignment of error, Hobart argues that the state court failed to enter a final judgment adjudicating the rights and liabilities of all the

parties as required by ORS 18.125.[10] Hobart claims that the first judgment did not constitute a final judgment because it granted relief against the Asayeds and that the amended judgment did not constitute a final judgment because it failed to include the Asayeds.

That peculiar argument, aside from its novelty, has no merit. The original judgment entered provided relief against Hobart and Indigo. It did not provide plaintiff relief against the Asayeds, but at the time of entering the judgment in the docket, the court clerk mistakenly docketed it against all the defendants, including the Asayeds. The amended judgment was filed to conform the docket to the judgment entered. It did not alter the judgment against Hobart and Indigo. The entry of a judgment is a ministerial act — merely recording the judgment previously rendered. The court in effect properly corrected a clerical error. *Daugharty v. Gladden,* 217 Or 567, 341 P2d 1069 (1959); *State v. Blake,* 7 Or App 307, 490 P2d 1026 (1971).

---

[10]

"(1) Where more than one demand for relief is presented in a suit or action, whether as multiple causes of suit or action, counterclaims, cross-claims, or third-party actions or suits, or when multiple parties are involved, the court may direct the entry of a final judgment or decree as to one or more but fewer than all of the causes of suit or action or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment or decree. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the causes of suit or action or the rights and liabilities of fewer than all the parties shall not terminate the proceeding as to any of the causes of suit or action or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment or decree adjudicating all the causes of suit or action and the rights and liabilities of all the parties.

"(2) When the court has ordered a final judgment or decree under the conditions stated in subsection (1) of this section, the court may stay enforcement of that judgment or decree until the entering of a subsequent judgment or judgments or decree or decrees and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment or decree is entered."

■ Finally, Hobart argues that plaintiff's cost bill was untimely, and that the court erred in denying its objections to it. ORS 20.210 provides:

> "Costs and disbursements shall be taxed and allowed by the court or judge thereof in which the action, suit or proceeding is pending. No disbursements shall be allowed to any party unless he serves on such adverse parties as are entitled to notice by law, or rule of the court, and files with the clerk of such court within 10 days after the rendition of the judgment or decree, a statement showing with reasonable certainty the items of all disbursements, including fees of officers and the number of miles of travel and number of days' attendance claimed for each witness, if any. ***."

Plaintiff filed her cost bill on December 5; the judgment had been entered on November 16. Removal was effected by Hobart on November 17, when the requirements of 28 USC § 1446 were completed. On December 4, the federal court remanded the case to state court. Plaintiff's cost bill was timely, if the time period for the filing was suspended while the matter was pending before the federal court. We conclude that it was. The state court was without jurisdiction to act once the required steps of removal had been completed until the case was remanded from the federal court. During the period of the jurisdiction of the federal court, therefore, the 10-day period was tolled. *See* 38 ALR Fed 824, § 26, p 835.

Affirmed.